IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES WILLIAM BAILEY, IV, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO: 1:05-CV-419-T |
| | ) |
| HOUSTON COUNTY JAIL, | ) |
| et. al., | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me, the undersigned authority for administering oaths, personally appeared **Darla Jane Speigner**, who is a Registered Nurse and is also a Certified Nurse Practitioner and is employed as one of four nurses for purposes of rendering medical services and treatment for inmates at the Houston County Jail, who being by me first duly sworn, deposes and says as follows:

I am Darla Jane Speigner. I am a Certified Registered Nurse Practitioner (CRNP) in the State of Alabama and I am one of four full time nurses working in the Houston County Jail.

Unless otherwise indicated expressly or by the context herein, I have personal knowledge of the facts and information contained herein. I make this affidavit after review of the subject matter and a review of the Plaintiff's Houston County Jail inmate medical file, which includes records from

DARLA JANE SPEIGNER AFFIDAVIT                                           PAGE 1

EXHIBIT 5

Southeast Alabama Medical Center related to the February 19, 2005 incident, in an attempt to address the allegations of Plaintiff in this case.

In addition to funding four full time nurse positions (one of which is a Certified Registered Nurse Practitioner), a doctor contracted as the staff doctor and a registered supervising pharmacist for the provision of medical care to inmates such as the plaintiff, the County Jail provides a general medical clinic for medical problems that may arise in the jail. The medical clinic is held daily, Monday through Friday. The clinic is staffed by the staff physician and/or the Certified Registered Nurse Practitioner under the supervision of the physician. The nurses are in the Pods each day passing out inmate medications as well. Thus, inmates are given daily access to nursing services, hospital emergency room services, if necessary, and the general medical clinic. In addition, the nurses who work at the jail carry southern line radio telephones and alternate being "on call" so there is generally a nurse available "on call" to the jail on a 24 hour a day, seven days a week, basis.

It is the policy of the Houston County Jail that all requests for medical treatment are forwarded to one of the nurses on duty with the expectation that appropriate and necessary medical treatment will be provided to or obtained for the inmate.

The plaintiff was admitted to the jail on December 22, 2004. On that date, the plaintiff was screened by jail staff. According to the jail's intake form at the time the plaintiff was incarcerated in the jail, he complained of a history of kidney stones, fever, loss of consciousness/passing out at the wheel of a car, and sore teeth.

The plaintiff was seen by medical staff in the jail medical clinic over five times.

On December 27, 2004, the plaintiff was seen in the jail medical clinic for medical and physical evaluation as a part of the jail's medical intake process. At that time the plaintiff claimed

to be deaf in his right ear since he was six years old. He also voiced a prior history of kidney stones and of fainting at times -- at least two times with the most recent fainting episode occurring six days before (i.e., on or about December 21, 2004).

On January 10, 2005, the plaintiff was seen for depression and anxiety complaints for which he was prescribed Vistaril and Prozac with orders for follow-up in ten to fourteen days. The plaintiff was discharged back to his cell.

On January 24, 2005, the plaintiff was seen in the jail medical clinic for follow-up evaluation. At that time, in addition to his other medications, the plaintiff was ordered to receive a finger stick blood sugar (FSBS) test along with other diabetic inmates. The plaintiff was discharged back to his cell.

On January 28, 2005, the plaintiff was given a FSBS test which was within normal limits.

On February 18, 2005, the plaintiff was seen in the jail medical clinic for complaints of finger injury and claimed green vegetable allergy. At the time, the plaintiff stated that he thinks his "finger may be broke" as a result of "another inmate's foot hit his finger as he fell." A blood blister on the third finger of his right hand and some swelling was noted. No bleeding was observed and the plaintiff was able to move the finger. A sterile dressing with antibiotic cream was applied to the blood blister and the plaintiff was discharged back to his cell.

On Saturday, February 19, 2005, after the plaintiff repeatedly assaulted a corrections officer and had to be subdued to restore order, the plaintiff was taken as a precautionary measure to the Southeast Alabama Medical Center for evaluation and treatment. According to the records of the Southeast Alabama Medical Center (a copy of which is a part of his jail medical file), the emergency room physician notes that "patient states [he] got in a fight in Houston County Jail" as the cause of

the plaintiff's injuries. The admitting nurse noted that the plaintiff told her that the plaintiff "picked fight in jail, got pepper sprayed by officer in eyes – fell down and hit head on bench." The hospital records reflect that the plaintiff had a contusion (bruise) over his right eye just below the scalp. The records also reflect that the plaintiff also had a laceration (cut) that was 1.5 centimeter (less than one-half inch) in length for which the plaintiff received two stitches. While at the hospital the plaintiff was given a CT scan of his head which was normal, but some soft tissue swelling at the scalp was noted, which is consistent with the bruise found during his physical examination by the emergency room physician. The plaintiff's cervical spine and lumbar spine were x-rayed, and the radiologist report finds plaintiff's cervical and lumbar spine x-rays to be normal.

The emergency room record reflects that the plaintiff was not admitted, but was discharged with no follow-up orders given. At the time of discharge the plaintiff was noted to be in no distress. Upon discharge the plaintiff was prescribed Anaprox which is a non-steroidal, non-narcotic anti-inflammatory medicine very similar to Aleve.

On February 25, 2005, the plaintiff was seen again in the jail medical clinic for complaints of multiple pains and the complaint that green vegetables cause his "bowels [to] lock up." At that time, the plaintiff subjectively complained of "back/neck pain since last week when per inmate [plaintiff] was 'taken down.'" He claimed at that time to be "having difficulty seeing out of his right eye and that everything appears orange." The plaintiff was found to have several bruises and swelling around his right eye. The plaintiff was prescribed Flexeril, Ultram and urinalysis testing was ordered. The plaintiff was discharged back to his cell.

In addition to the foregoing records, I ordered and received a copy of the plaintiff's medical records from the State of Alabama Department of Corrections since the plaintiff was taken into

custody on March 24, 2005. The State's Intake Health Evaluation form indicates that the plaintiff had a history of head trauma, loss of consciousness, vision problems and hearing problems. The plaintiff denied any history of dizziness, seizures and any history of back/neck problems when evaluated by the prison medical staff.

The prison system medical staff performed a physical examination of the plaintiff on March 25, 2005 and found no signs of head trauma and that the plaintiff had full range of motion in his neck and back. When subsequently seen in the prison's medical clinic, the plaintiff complained of head injury, but upon evaluation, the medical staff found no obvious signs or symptoms of head trauma. The plaintiff was diagnosed with depression.

The plaintiff was seen by the nurse every day when he received his medications with no real medical problem observed or noted.

The jail medical staff is committed to providing needed medical treatment to every inmate even when the inmate is manipulative, abusive or does not cooperate in his treatment. The jail medical staff makes medical decisions based on medical needs, not the desires of the inmate.

Based on my treatment to the plaintiff and my review of the plaintiff's jail medical file, the plaintiff was, during the period of time made the basis of Plaintiff's complaint, provided all necessary medical testing, treatment and care while in the Houston County Jail. At all times alleged in Plaintiff's Complaint, he has been given and provided adequate and necessary medical treatment and has at all times relevant thereto been provided with all medically necessary medications. While in the jail, the plaintiff has been seen almost every day by one or more of the nurses in the jail including myself as the Certified Registered Nurse Practitioner or by one of the other members of the jail medical staff.

I am one of the custodians of records of inmate medical records in the Houston County Jail. A true and correct copy of plaintiff's jail medical file relative to this case, as maintained by the jail in the ordinary course of its operations as a county jail, is attached hereto as **Exhibit "A"** and is incorporated herein by reference as if fully set forth.

For more detail relative to the medical treatment rendered to the plaintiff, please refer to the copy of his jail medical file which is attached hereto as **Exhibit "A"**.

_____
DARLA JANE SPEIGNER

STATE OF ALABAMA,

HOUSTON COUNTY.

Before me the undersigned authority, personally appeared **Darla Jane Speigner**, who being sworn by me according to law, deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of her information, knowledge and belief.

Sworn to and subscribed before me on this the 12th day of August, 2005.

_____
NOTARY PUBLIC
My Commission Expires: 12-9-2008